IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| STEVEN MICHAEL LAIRD, | § § § | |
| *Plaintiff*, | § § | SA-24-CV-00059-OLG |
| vs. | § § § | |
| MARTIN J. O'MALLEY, COMMISSIONER OF SOCIAL SECURITY, | § § § § | |
| *Defendant*. | § § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Orlando L. Garcia:**

This report and recommendation concerns Plaintiff's request for review of the administrative denial of his applications for a period of disability and disability insurance benefits ("DIB") and for supplemental security income ("SSI") under Titles II and XVI of the Social Security Act. 42 U.S.C. §§ 405(g), 1383(c)(3). By this appeal Plaintiff argues that substantial evidence does not support the Commissioner's treatment of his mental limitations because (1) the ALJ erred in analyzing Listing 12.04 at step three and (2) the ALJ erred in evaluating the persuasiveness of the opinion of consultative examiner Marie C. Weil.

The undersigned held a hearing on the issues raised in this appeal on October 28, 2024, at which counsel for both parties appeared via videoconference. After considering Plaintiff's Original Brief [#5], Defendant's Brief in Support of the Commissioner's Decision [#8], Plaintiff's Reply Brief [#9], and the transcript ("Tr.") of the administrative proceedings [#3], the applicable case authority and relevant statutory and regulatory provisions, the arguments of

1

counsel at the Court's hearing, and the entire record in this matter, the undersigned concludes the Commissioner did not commit any reversible error in the underlying administrative proceedings and that substantial evidence supports the Commissioner's decision denying disability benefits. It is therefore recommended that the Commissioner's decision that Plaintiff is not disabled be affirmed.

## I.  Jurisdiction

This Court has jurisdiction to review a decision of the Social Security Administration pursuant to 42 U.S.C. § 405(g).  The undersigned has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

## II.  Legal Standard

In reviewing the denial of benefits, the Court is limited to a determination of whether the Commissioner, through the ALJ's decision,[1] applied the proper legal standards and whether the Commissioner's decision is supported by substantial evidence.  *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3).  "Substantial evidence is more than a scintilla, less than preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Villa v. Sullivan*, 895 F.2d 1019, 1021–22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).  The Court may not reweigh the evidence or substitute its judgment for that of the Commissioner.  *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).  Conflicts in the evidence and credibility assessments are for the Commissioner, not the court, to resolve.  *Id.*  While substantial deference is afforded the Commissioner's factual findings, the Commissioner's legal conclusions, and claims of

---

[1] In this case, because the Appeals Council declined to review the ALJ's decision, the decision of the ALJ constitutes the final decision of the Commissioner, and the ALJ's factual findings and legal conclusions are imputed to the Commissioner.  *See Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005); *Harris v. Apfel*, 209 F.3d 413, 414 (5th Cir. 2000).

procedural error, are reviewed *de novo*. *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

In determining if a claimant is disabled, the Commissioner uses a sequential, five-step approach, which considers whether: (1) the claimant is currently engaged in substantial gainful activity, (2) she has a severe impairment, (3) the impairment meets the severity of an impairment enumerated in the relevant regulations, (4) it prevents the claimant from performing past relevant work, and (5) it prevents her from doing any relevant work. *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018). If the claimant gets past the first four stages, then the burden shifts to the Commissioner on the fifth step to prove the claimant's employability. *Id.* A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987); *see also* 20 C.F.R. § 404.1520(a)(4).

### III. Factual and Procedural Background

This appeal exclusively challenges the ALJ's analysis of Plaintiff's mental limitations. Therefore, this report and recommendation focuses solely on the mental health aspects of the disability applications at issue.

Plaintiff Steven Michael Laird filed his applications for DIB and SSI in November of 2018, alleging disability beginning August 21, 2018, based on various physical and mental conditions, including anxiety, panic, attention deficit hyperactivity disorder ("ADHD"), and obsessive compulsive disorder ("OCD"). (Tr. 445, 509.) Laird, who was 40 years old at the time he filed his applications, also has a diagnosis of bipolar disorder. (Tr. 913–17.) His past work experience consists of work as a forklift operator, shipping and receiving clerk, truck driver, and pumper in an oilfield. (Tr. 510, 539, 688.) His longest employment was with

Walmart, but Laird was fired from Walmart twice for poor attendance and for getting into a fight with a coworker. (Tr. 536.) Adult Function Reports completed in support of his applications describe Laird as low functioning, living with his father for support, and suffering from severe anxiety, which limits his ability to interact with others. (Tr. 521–37.) Laird has not worked in any significant capacity since 2017. (Tr. 506.) The record reflects that Laird takes numerous psychotropic medications to manage his mental conditions and has seen multiple providers to manage and treat his anxiety and panic disorders, including psychologist Maryanne Westbrook and Nurse Practitioner Lance DeLong. (Tr. 702, 1382, 1389–93, 1500.)

The Social Security Administration ("SSA") denied Laird's request for DIB and SSI in April 2019, and again upon reconsideration in October 2019, finding him capable of performing work at the medium exertional level. (Tr. 150–208.) At both the initial and reconsideration levels, the State Agency Psychological Consultants ("SAPCs") evaluated Laird's mental limitations and found him to have moderate limitations in all four areas of the psychiatric review technique ("PRT")[2] known as the Paragraph B criteria: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing himself. (Tr. 150, 165, 184, 202.) However, the SAPCs both found marked limitations in his ability to understand, remember, and carry out <u>detailed</u> information and in his ability to interact with the <u>general public</u>. (Tr. 155, 170–71, 189–90, 208.)

Following the denial of his claim, Laird requested an administrative hearing. The first administrative hearing was before ALJ Cole Gerstner on July 14, 2020. (Tr. 40–74.) At the hearing, Laird testified regarding his bipolar disorder and associated violent outbursts. (Tr. 57–58.) Laird explained that he was fired from his position as a forklift operator at Walmart due to

---

[2] The PRT is the method used for evaluating mental impairments at all levels of the administrative review process. 20 C.F.R. § 404.1520a(c)(3).

his poor attitude and inability to get along with coworkers. (Tr. 49.) Laird also described an incident at Walgreens when he became enraged with a pharmacist while picking up a prescription medication. (Tr. 57–58.) Laird further testified that at the time of his July 2020 hearing he was living in an RV behind his parents' home. (Tr. 61.)

ALJ Gerstner issued an unfavorable decision on October 6, 2020, finding Laird capable of performing medium work despite his physical and mental limitations. (Tr. 215–28.) Laird requested review by the Appeals Council, and the Appeals Council reversed and remanded for further administrative proceedings due to an issue with certain post-hearing evidence not being received by Laird and his counsel. (Tr. 236.) ALJ Jennifer Fellabaum held a second administrative hearing on November 16, 2021. (Tr. 75–113.) At the hearing, Laird testified regarding his frequent panic attacks and anxiety and explained that his medications were not sufficiently managing his symptoms and that he was unable to take his Xanax while working because he only receives 15 doses per month. (Tr. 95.) Laird also explained that he had recently moved in with his father due to his mother's death in September 2020. (Tr. 91.) Laird testified that in the wake of his mother's death, he fell behind on things and struggled to complete daily tasks and relied on his father for assistance. (Tr. 91–92.) At the close of the hearing, Laird's attorney requested a referral for a consultative psychological examination. (Tr. 110–11.) The ALJ granted the request, and psychologist Marie C. Weil examined Laird on December 22, 2021. (Tr. 1535–44.)

As part of her assessment, Dr. Weil reviewed two years of psychiatric progress notes from Laird's treating providers and performed several psychological assessments. (Tr. 1539.) Dr. Weil diagnosed Laird with bipolar disorder, ADHD, and generalized anxiety disorder and found him to have marked limitations in his ability to interact appropriately with the public,

5

supervisors, and coworkers, as well as his ability to respond appropriately to changes in the routine work setting. (Tr. 1535, 1542.) She also found him to have moderate limitations in carrying out complex instructions and making judgments on complex work-related decisions. (Tr. 1535.) After the examination, ALJ Fellabaum obtained answers from a vocational expert via interrogatories as to Laird's ability to perform work in the national economy. (Tr. 688–91.) The ALJ then held a supplemental hearing on November 15, 2022. (Tr. 114–41, 688–91.)

ALJ Fellabaum issued an unfavorable decision on November 28, 2022. (Tr. 11–30.) The ALJ found that Laird met the insured status requirements of the Social Security Act through December 31, 2022, and applied the five-step sequential analysis required by SSA regulations. (Tr. 17.) At step one of the analysis, the ALJ found that Laird had not engaged in substantial gainful activity since August 21, 2018, the alleged disability onset date. (*Id.*) At step two, the ALJ found Laird to have the severe mental impairments depression, bipolar disorder, anxiety disorder, and ADHD, as well as several physical impairments. (*Id.*) At step three, the ALJ found Laird does not suffer from any impairment or combination of impairments satisfying the severity of any of the listings to be considered presumptively disabled. (Tr. 17–19.) The ALJ considered Listings 12.04 (depressive, bipolar, and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.11 (neurodevelopmental disorders) and applied the PRT. (Tr. 18.) The ALJ found Laird to have marked limitation in the area of interacting with others. (*Id.*) In the other three functional areas, the ALJ found Laird to have moderate limitations. (*Id.*)

Before reaching step four of the analysis, the ALJ found Laird retains the RFC to perform light work with various physical and mental limitations. (Tr. 19–28.) As to mental limitations, the ALJ found Laird capable of performing simple, routine, and repetitive tasks with no fast-

paced assembly-line work; capable of interacting only occasionally with supervisors; capable of only rare interactions with coworkers and the general public (less than 10 percent of the workday); and capable of performing work in the same location every day, with no more than occasional changes to the work tasks assigned. (Tr. 19.)

At step four, the ALJ found Laird unable to perform any of his past relevant work. (Tr. 28–29.) However, the ALJ concluded that Laird could perform other work in the national economy despite his physical and mental limitations, such as work as a housekeeper, sub assembler, and small products assembler, and was therefore not disabled. (Tr. 29–30.) Laird requested review of the ALJ's decision, but his request for review was denied by the Appeals Council on November 15, 2023. (Tr. 1–8.) Laird filed the instant case on January 11, 2024, seeking review of the administrative determination.

### III. Analysis

Laird argues the ALJ erred in evaluating his mental health symptoms in two regards—in her evaluation of Dr. Weil's opinion and in evaluating Listing 12.04 at step three. Neither of these arguments is a ground for reversal and remand.

**A.  The ALJ did not err in his treatment of Dr. Weil's opinion.**

Laird contends the ALJ erred in evaluating the persuasiveness of Dr. Weil's opinion. As noted, Dr. Weil performed a consultative psychological examination of Laird in December 2021 and concluded that Laird's mental impairments, including his bipolar, anxiety, and ADHD disorders, cause marked limitations in his ability to interact appropriately with the public, supervisors, coworkers, or to respond appropriately to changes in the routine work setting. (Tr. 1535, 1542.) ALJ Fellabaum found Dr. Weil's opinion only partially persuasive and concluded Laird has the ability to interact with supervisors occasionally but coworkers and the general

public rarely. (Tr. 19.) According to Laird, the ALJ did not articulate a reasonable basis for departing from Dr. Weil's more limited findings. Laird argues that the vocational expert testified that an inability to interact with others appropriately precludes competitive work in the national economy, and the ALJ failed to properly consider Dr. Weil's findings of Laird's marked social limitations. (Tr. 138.) A review of the ALJ's opinion and the administrative record before the Court confirms that the ALJ did not commit any error in evaluating Dr. Weil's opinion.

The governing regulations do not require the Commissioner to defer or give any specific evidentiary weight, including controlling weight, to any medical opinion or prior administrative medical finding, such as that of Dr. Weil. *See* 20 C.F.R. § 404.1520c(a). Instead, the Commissioner is to consider all medical opinions and prior administrative medical findings using the same specific factors outlined in the rule, the most important of which are supportability and consistency. *Id.* § 404.1520c(b)(2). The Commissioner must articulate how persuasive he finds each of the opinions in the record and explain his conclusions with regard to the supportability and consistency factors. *Id.* The Commissioner may, but is not required to, articulate the consideration of the other factors, such as length of treatment relationship and medical specialization, unless certain circumstances not at issue here are present. *Id.* § 404.1520c(b)(3).

The record reflects that ALJ Fellabaum (whose conclusions and analysis are imputed to the Commissioner) evaluated both the supportability and consistency factors required under the governing rule. Supportability relates to the relevance of the objective medical evidence and the explanations offered by a medical source in support of her conclusions. *See id.* §§ 404.1520c(c)(1), 416.920c(b)(2). The ALJ found that Dr. Weil's opinions as to Laird's marked limitations "were not fully supported by her clinical findings" because Dr. Weil noted in her evaluation that Laird "was cooperative and forthcoming, made good eye contact, and was

appropriately dressed" and found Laird to have fair insight and judgment. (Tr. 27, 1541–42.) In essence, the ALJ found that Laird could present and interact appropriately in at least some settings.

Consistency refers to how consistent a provider's statements are with the evidence as a whole. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The ALJ found Dr. Weil's conclusions regarding Laird's social limitations to be inconsistent with other evidence. (Tr. 27.) First, the ALJ noted that Laird had told his psychologist, Dr. Westbrook, in a previous appointment that "in the past, . . . [he] was always changing jobs because he was unable to focus on the tasks he was given by employers and wanted to try new things" but that "[w]hen he got a job with good enough benefits, he was able to get mental help with insurance, so that he could treat his ADHD with medication" such that "his progress reports . . . and his personal life improved." (Tr. 27, 745.) Yet, Dr. Weil embraced Laird's representations at the consultative examination that he had been "fired from almost every job" due to conflicts, verbal altercations, and difficulty taking direction and instruction from others. (Tr. 27, 1539.) The ALJ also noted that Dr. Weil's findings were inconsistent with Dr. Westbrook's and Nurse Practitioner DeLong's treatment notes, which showed Laird to be generally stable on medication, with only occasional increase in symptoms treated with medication adjustments. (Tr. 27.) Indeed, in visits with Dr. Westbrook in 2018, 2019, and 2020, Laird reported that his medications were working well. (Tr. 23, 716, 723, 1387.) Laird reported similarly to DeLong in 2021 and 2022—that he was doing well with no complications. (Tr. 25, 1575, 1580, 1595, 1600, 1613, 1640.) Records throughout 2022 demonstrate that Laird was continuing to take Lexapro, Xanax, Adderall, Escitalopram, and Risperidone for his anxiety and other mental conditions. (Tr. 1560, 1596.) The ALJ reviewed these records and interpreted them as demonstrating that Laird was generally stable on his

medications. (Tr. 27.) The ALJ further emphasized that the medical records are devoid of any documentation of emergency or inpatient psychiatric treatment, which would be more consistent with the degree of limitation found by Dr. Weil. (Tr. 27.) Finally, the ALJ found Dr. Weil's limitations inconsistent with Laird's self-reported activities, which included breeding and selling dogs and driving back and forth from New Mexico to Texas for his breeding business and to care for his elderly parents. (Tr. 27.) The ALJ determined these activities demonstrated an ability to focus and concentrate and to function outside of the home. (Tr. 27.)

In his reply brief, Laird does not dispute the Commissioner's assertions that the ALJ properly evaluated the supportability and consistency factors required under the governing regulations. He simply argues that the ALJ should have noted other aspects of the medical records, such as frequent abnormal mental status exams demonstrating rapid and over-productive speech and anxious mood and affect. (Tr. 1426–28, 1452–55, 1499, 1503.) It is true that Laird's treatment records contain somewhat contradictory notations. At the same appointments in which DeLong and Westbrook note that Laird is doing well without complications and only requesting medication refills, Laird still presented with some persistent symptoms of mental disturbance. (Tr. 716, 723.) And there are at least a few notations in the record from appointments at which Laird requested medication changes due to reports that his medications were not working. (Tr. 719.) Yet there are also notations throughout the record that Laird's "social phobia" was being managed with medication. (Tr. 1371, 1391, 1604, 1608, 1618.) Moreover, there are many notations in the medical records that Laird presented to his doctor's appointments as cooperative and calm, making good eye contact, with intact thought processes, and alert and oriented cognition, including during his consultative examination with Dr. Weil. (Tr. 716, 720, 724, 728, 732, 735, 739, 746, 1541.)

As to the ALJ's reference to Laird's ability to work due to his history of dog breeding, the undersigned acknowledges that the ALJ likely overstated the significance of these activities. As Laird points out in his briefing, the references to dog breeding are minimal. Laird testified before the ALJ that his dog breeding was mostly happenstance; his dog got pregnant, and he briefly sold her puppies during a six-month period. (Tr. 82, 1393.) However, during that time, Laird also reported to Westbrook that he was "happy with himself," and was enjoying dog breeding for income, and viewed himself at the time as only having "minor quirks" that needed to be "fine-tuned." (Tr. 1393.) These notations underscore that Laird's mental-health symptoms were cyclical and that he had moments of both stability and instability, which were being addressed by changes to his medication. Yet, as noted by the ALJ, despite these ups and downs, Laird has never had any episode of significant decompensation requiring hospitalization or inpatient treatment.

Ultimately, it is within the ALJ's discretion to resolve these variations and conflicts in the evidence. *Martinez*, 64 F.3d at 174. This Court may not reweigh the evidence before the ALJ at the time of her decision or substitute its own judgment for that of the Commissioner, even if different and supportable inferences could be drawn from the record. *See Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). This Court is limited to evaluating whether the Commissioner's findings—through the decision of the ALJ—are supported by substantial evidence. Here, the ALJ credited much of Dr. Weil's conclusions, limiting Laird to only rare interactions with coworkers and the general public and only occasional interactions with supervisors. The ALJ articulated why he still believed Laird had some ability to interact with others and why he chose not to credit all of Dr. Weil's findings, addressing both the supportability and consistency factors as required under the governing regulations. Again, substantial evidence is "that which is

relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion." *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).  Because substantial evidence supports the finding that Laird is able to have some, albeit limited, interaction with others, he has not demonstrated that he is entitled to remand based on the ALJ's evaluation of Dr. Weil's opinion as it relates to Laird's mental RFC.

**B.     The ALJ did not commit any reversible error in his evaluation of Listing 12.04 at step three.**

Laird also contends that the ALJ's step three determination regarding Listing 12.04 is not supported by substantial evidence because the ALJ erred in evaluating both the Paragraph B and Paragraph C criteria of the PRT.  Laird, as claimant, bears the burden at step three to show that he satisfies all of a listing's criteria, meaning he must satisfy the criteria of both paragraphs A and B or both paragraphs A and C of Listing 12.04 to establish disability based on depressive, bipolar, and other related disorders.  *Sullivan v. Zebley*, 493 U.S. 521, 530–31 (1990); *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990); *see also* 20 C.F.R. Pt. 404, Subpt. P, App'x 1, 12.04. Laird contends that the ALJ erred in evaluating both paragraphs B and C as to Listing 12.04.

Paragraph B requires a showing of an extreme limitation of one, or a marked limitation of two, of the four criteria of the PRT: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.  20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.04.  Again, the ALJ found Laird to have marked limitations in interacting with others but only moderate limitations in the other three functional areas. (Tr. 18–19.)  Laird's position is that the ALJ should have found marked limitations in at least one other area.   Because there is substantial evidence to support the ALJ's finding of moderate limitations, Laird is not entitled to remand on this basis.

Both Dr. Weil and the SAPCs found Laird to have only mild or moderate limitations in the three areas of the PRT besides interacting with others. (Tr. 150, 165, 184, 202, 1535.) Therefore, the ALJ's Paragraph B findings are consistent with, and supported by, the findings of the both the consultative examiner and the SAPCs at both the initial and reconsideration levels. Regarding the ability to understand, remember, or apply information, the ALJ noted that Dr. Weil found Laird to be average in intellectual functioning and somewhat limited in the speed and accuracy of various cognitive assessments with a propensity for frustration. (Tr. 18.) Regarding concentration, persistence, and pace, the ALJ noted that Laird was attentive and persistent throughout Dr. Weil's assessment, though slow in response time, and that he was capable of breeding dogs for income and traveling out of state to take care of his father and deliver puppies. (Tr. 18–19.) As noted previously, the ALJ might have overstated the significance of the dog breeding, but the ALJ articulated other bases for finding moderate as opposed to marked limitations in this area. Finally, as to the ability to adapt and manage oneself, Dr. Weil's assessment states that Laird reported during the examination that he can perform all his activities of daily living independently, including ambulating, dressing, bathing, and managing medications. (Tr. 1541.) Based in part on this representation, Dr. Weil found Laird to have only moderate limitations in this functional area. (Tr. 1541.) The ALJ was entitled to credit this assessment despite other evidence in the record that Laird failed to thrive living on his own and needed parental support for many activities, such as paying bills. (Tr. 91.)

Laird has also not demonstrated that the ALJ's treatment of the Paragraph C criteria mandates remand. Paragraph C requires a showing of a "serious and persistent" mental disorder, i.e., "medically documented history of the existence of the disorder over a period of at least 2 years" plus evidence of both (1) medical treatment, mental health therapy, psychosocial support,

13

or a highly structured setting that is ongoing and that diminishes the symptoms and signs of the disorder; and (2) marginal adjustment, i.e., minimal capacity to adapt to changes in one's environment or to demands that are not already part of daily life. 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.04. The regulations define "marginal adjustment" as "a fragile adaptation to the requirements of daily life," such as an inability to function outside of the home (or a more restrictive setting) without substantial psychosocial supports or episodes of deterioration that have required hospitalization or absence from work. *Id.* § 12.00(G)(2). Laird argues that the ALJ failed to discuss the Paragraph C criteria or to explain the reasons he found Laird not to satisfy Paragraph C's requirements.

The ALJ's Paragraph C analysis was indeed conclusory. The entirety of the ALJ's Paragraph C discussion was as follows:

> I have also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. The record does not establish that the claimant has only marginal adjustment, that is, a minimal capacity to adapt to changes in the claimant's environment or to demands that are not already part of the claimant's daily life.

(Tr. 19.) At the hearing before the undersigned, the Commissioner conceded that the ALJ erred in failing to explain the reason for not finding the Paragraph C criteria satisfied. The Commissioner is required to provide "a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007) (quoting 42 U.S.C. § 405(b)(1)). This requires the ALJ to discuss the evidence and explain why she did not find the claimant disabled at each step of the sequential process. *See id.* The ALJ erred by failing to do so.

However, procedural perfection in the administrative proceedings is not required; only harmful error requires remand. *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988) (per curiam). An error is only harmful if the substantial rights of a party have been affected, i.e., if the error caused prejudice by possibly affecting the Commissioner's step three decision. *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003).

Here, although the ALJ failed to discuss the Paragraph C criteria at step three, the ALJ analyzed evidence relevant to the Paragraph C standard at other steps of the sequential process. The ALJ repeatedly emphasized that Laird never required inpatient psychiatric care and never had any emergency hospitalizations related to his mental condition. (Tr. 25–27.) Additionally, the ALJ noted that Laird told Dr. Weil during his consultative examination that he was able to perform his activities of daily living independently, including medication management. (Tr. 19.) This evidence provides support for the ALJ's determination that Laird failed to demonstrate an inability to function outside of the home without substantial psychosocial support or that Laird had had hospitalizations or absences of work due to episodes of psychological decompensation. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(G)(2).

Laird cites other evidence in the record evidencing his struggles to function independently as support for his argument that the ALJ's step three error was harmful and requires remand. The record contains testimony from Laird that he fell behind on his bills before he moved in with his father and was fined for failing to mow his lawn (presumably by his neighborhood association) and on one occasion had his electricity shut off. (Tr. 61–64, 89, 91, 100–01.) Laird also testified that his father helps him with most of his shopping and laundry because he lies on the couch for the majority of the day. (Tr. 100–01.) But, as the ALJ noted in

15

her opinion, Laird moved in with his father not due to mental decompensation but because he had no money to pay his bills due to lack of work and no income. (Tr. 91.)

In summary, Laird as claimant bears the burden of demonstrating that he satisfies Listing 12.04 and is therefore disabled. *Selders*, 914 F.2d at 619. The ALJ articulated specific reasons for finding Laird suffers from only moderate limitations in three out of the four Paragraph B criteria, and the ALJ's findings in this regard are consistent with the opinion of both the SAPCs and Dr. Weil and are therefore supported by substantial evidence. As to the Paragraph C criteria, although the ALJ's discussion was conclusory, the ALJ's overall conclusion that Laird did not suffer from periods of decompensation reflecting the marginal adjustment required to satisfy the listing is reflected elsewhere in her opinion. Furthermore, Laird has not demonstrated that his substantial rights have been affected by the ALJ's failure to further discuss the Paragraph C criteria such that remand is required.

## IV.  Conclusion and Recommendation

Based on the foregoing, the undersigned concludes that the that the Commissioner did not commit any reversible legal error in the underlying administrative proceedings, and the Commissioner's decision that Plaintiff is not disabled is supported by substantial evidence. Accordingly, the undersigned recommends that the Commissioner's decision be **AFFIRMED**.

## V.  Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is

modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Objections are limited to no more than 20 pages unless leave of court is granted. The party shall file the objections with the Clerk of Court and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1).

SIGNED this 17th day of January, 2025.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE